Kevin F. Ruf (#136901)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: 310-201-9150
Facsimile: 310-201-9160
Email: kevinruf@gmail.com

Brian Murray (Pro Hac Vice to be filed)
**GLANCY PRONGAY & MURRAY LLP**
230 Park Avenue, Suite 530
New York, New York 10169
Telephone: 212-682-5340
Facsimile: 212-884-0988
Email: bmurray@glancylaw.com

Paul C. Whalen (Pro Hac Vice to be filed)
**LAW OFFICE OF PAUL C. WHALEN, P.C.**
768 Plandome Road
Manhasset, NY 11030
Telephone: 516-426-6870
Facsimile: 212-658-9685
Email: paul@paulwhalen.com

Jasper D. Ward (Pro Hac Vice to be filed)
**JONES WARD PLC**
1205 E Washington St, Suite 111
Louisville, Kentucky 40206
Telephone: 502-882-6000
Email: jasper@jonesward.com

*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICOLE STERNEMANN and PHYLLIS STERNEMANN, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br> v.<br><br>FACEBOOK, INC.,<br><br>       Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs Nicole Sternemann and Phyllis Sternemann, individually and on behalf all others similarly situated, allege the following against Defendant Facebook, Inc. ("Facebook" or "Defendant"), based on personal knowledge as to Plaintiffs and Plaintiffs' own acts and on information and belief as to all other matters based upon, *inter alia*, the investigation conducted by and through Plaintiffs' undersigned counsel:

## SUMMARY OF THE CASE

1.     Facebook operates a social networking website that allows people to communicate with their family, friends, and co-workers. Facebook develops technologies that allow the sharing of information, pictures, videos, website links, and more. Facebook users can share and restrict information based on their own defined criteria. By the end of 2017, Facebook had over 2 billion active users.  The company's mission statement is "to give people the power to build community and bring the world closer together. People use Facebook to stay connected with friends and family, to discover what's going on in the world, and to share and express what matters to them."  In recent years, however, Facebook's stated business model has in reality changed into a data aggregation and marketing apparatus masquerading as a social network.

2.     Facebook offers several ways in which users may access its social media product.  These include but are not limited to a website, www.facebook.com, accessed through a computer's web browser; Facebook mobile device applications available on many operating systems (e.g. Android, iOS); and ancillary applications such as Facebook Messenger for mobile devices.

3.     Facebook's marketing of its mobile device applications has caused many Facebook users to install its applications on their cell phones.

4.     When installing such applications, Facebook users are provided with a terms of service and/or privacy notice on the screen of their mobile device.  These basically instruct users that the information they post to Facebook will be used by the company consistent with the users' privacy settings as established by the user.  The terms of service and privacy notice *do not* instruct (and in the past have not instructed) the ordinary and reasonably aware

Facebook user that installing the application on a cell phone will bring about the logging of all the user's phone and text communications (including recipients, dates of communication, length of communication, and manner of communication) on Facebook's servers for Facebook's proprietary use.

5.      In the Android versions of Facebook's mobile application, Facebook has accumulated and stored information in a breadth and manner above that which users knowingly authorized; this practice is ongoing.  This enterprise includes accessing users' call and text histories, including metadata such as the names and phone numbers of persons contacted, the times of such contacts, and the lengths of such contacts, hereafter referred to as "Personal Communications Information."

6.      Users' Personal Communications Information has been and continues to be stored to Facebook's proprietary servers.

7.      Before about 2017, the Android operating system for mobile devices permitted Facebook applications to get users' Personal Communications Information without completely disclosing that the applications would access all of the Personal Communications Information and send it to Facebook's private servers for storage.  Facebook exploited this technical structure of the Android operating system to get users' Personal Communications Information with deceptively nominal and insufficient notice such that ordinary Facebook users did not understand that they were allowing Facebook the power to download, save, and use their Personal Communications Information.

8.      Later versions of the Android operating system, beginning in or about 2017, necessitated further notice by Facebook applications to get this information.  Even then, Facebook did not take steps to make it simple to ordinary and reasonably aware users that their Personal Communications Information had been and would continue to be collected, stored, and used by Facebook.  Rather, ordinary and reasonably aware Facebook users understood only that their posts and communications activity on the Facebook website would be published consistent with their accounts' privacy settings.

9.      Facebook's  unauthorized  taking  and  use  of  its  users'  Personal

CLASS ACTION COMPLAINT

Communications Information demonstrates many wrongs, including a consumer bait-and-switch, an invasion of privacy, wrongful monitoring of minors, and an intrusion on privileged communications in the framework of Facebook users who use their cell phones (but not Facebook) to communicate in the framework of protected relationships including but not limited to that of attorney/client, doctor/patient, etc.  The policy also impacts the rights of minors.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are more than 100 class members, and at least one class member is a citizen of a state different from Defendant.  The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.    Venue is proper under 28 U.S.C. § 1391(c) since Defendant is a  corporation that does business in and is subject to personal jurisdiction in this District. Venue is also proper since a substantial part of the events or omissions giving rise to the claims in this action occurred in or emanated from this District, and because Facebook's terms of service document calls for litigation between users and the company to be governed by California law and provides for litigation of related disputes in this District.

## PARTIES

**A.    Class Representatives**

12.    Plaintiff Nicole Sternemann ("Plaintiff N. Sternemann") is a resident of Nassau County, New York. Plaintiff N. Sternemann bought a SAMSUNG-SM-G890A cellular phone. She runs the Android OS on her phone.  She uses the Facebook app on her phone.  Plaintiff N. Sternemann has set the privacy levels of her account so that no one can see her birth year or phone number; only friends can see posts; and only friends of friends can send friend requests.  She has never given permission for anyone to use or see the information from her phone, nor has she ever been asked by Defendant or any other person or company for such permission.  Were she asked, Plaintiff N. Sternemann would never have

given permission for anyone to use or see the information from her phone. She has held a Facebook account for a time in excess of the applicable statute of limitations for this matter.

13. Plaintiff Phyllis Sternemann ("Plaintiff P. Sternemann") is a resident of Nassau County, New York. Plaintiff P. Sternemann is the mother of Plaintiff N. Sternemann. Plaintiff P. Sternemann bought a Samsung J7 cellular phone in September 2017. She runs the Android OS on her phone. She uses the Facebook app on her phone. Plaintiff P. Sternemann has set the privacy levels of her account so that no one can see her birth year or phone number; only friends can see posts; and only friends of friends can send friend requests. She has never given permission for anyone to use or see the information from her phone, nor has she ever been asked by Defendant or any other person or company for such permission. Were she asked, Plaintiff P. Sternemann would never have given permission for anyone to use or see the information from her phone. She has held a Facebook account for a time in excess of the applicable statute of limitations for this matter.

**B.    Defendants**

14. Defendant Facebook, Inc. is incorporated in Delaware, and the Company's principal executive offices are located at 1601 Willow Road, Menlo Park, California 94025. Facebook's securities trade on the NASDAQ under the ticker symbol "FB."

**FACTUAL BACKGROUND**

15. On March 24, 2018, ArsTechnica.com, an esteemed online news authority in the technology sector, published an article titled "Facebook scraped call, text message data for years from Android phones." (https://arstechnica.com/information-technology/2018/03/facebook-scraped-call-text-message-data-for-years-from-android-phones/) The article states that Facebook's Android-based application for accessing its services included functions that would compile the phone numbers which a user's phone connected to, whether by voice call or text. The Facebook phone application passed on to Facebook's corporate servers information about each such communication on the subject phone, including but not necessarily limited to: the phone numbers and identities of the persons taking part in each communication, the date and time of each communication, and

CLASS ACTION COMPLAINT

the length of each communication.

16.     Such data compilation was set as part of the default installation of the Facebook application, such that users had to take affirmative steps to prevent their phones from being subject to such monitoring and reporting.  Combined with this, Facebook also did not provide notice of such monitoring and reporting in a way that ordinary and reasonably aware users would comprehend.  This resulted in a huge number of Facebook users being tricked into taking part in a monitoring system that they would not have agreed to had they first been told in simple language what data was being compiled, and what was being done with the data.

17.     By using such data collection methods, Facebook has been able to accumulate a set of data matching people to their phone numbers, but also matching people to one another.  By matching the phone numbers to other information, knowable by Facebook.com posts and other available information, Facebook can chart relationships and, to an extent, the character and type of relationships among affected Android users.  Ordinary and reasonably aware Facebook users, including Plaintiffs and class members, were not given sufficient information to knowingly opt into such a data collection program, and would not have done so if they had first been informed of the scheme in plain language.

18.     To the extent Facebook did reveal its system of collecting Personal Communications Information, it did so through deception and using language that did not put users on notice of what was actually being done by the company.  For instance, Facebook explained in or about 2016-2017 that it collected data "to help friends find each other."

19.     Millions of people use Facebook through their Android-based phones.

20.     On many Android phones, Facebook is installed as a default application, and cannot be removed by people who bought the phone, even if they would not otherwise choose to opt into Facebook's system of collecting and storing users' Personal Communications Information.

21.     In 2011, Facebook entered into a consent decree with the U.S. Federal Trade Commission ("FTC") in which the company agreed to get user consent for specified changes

to privacy settings.  The decree emerged from federal allegations that the company tricked consumers and forced them to share more personal information than they intended.  Yet, Facebook still continued in its policy of collecting Personal Communications Information as alleged herein, reflecting a pervasive intent to deceive and exploit Facebook users.

22.    Such conduct was in violation of Facebook's own Data Use Policy located on its website, which provided at all relevant times until recently, in part:

> Granting us permission to use your information not only allows us to provide Facebook as it exists today, but it also allows us to provide you with innovative features and services we develop in the future that use the information we receive about you in new ways. While you are allowing us to use the information we receive about you, you always own all of your information. ***Your trust is important to us, which is why we don't share information we receive about you with others unless we have:***
> - ***received your permission***
> - ***given you notice***, such as by telling you about it in this policy; or
> - removed your name and any other personally identifying information from it.

(Emphases added).

23.    The policy of collecting and using Personal Communications Information as alleged herein has violated the privacy of millions of people in every state.

24.    The terms of service agreement between Facebook and its users indicates that California law governs the relationship between Facebook and its users.  Thus, the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq*.) and the Consumer Legal Remedies Act (Cal. Civil Code §1750 *et seq*.) apply to all class members.

## CLASS ACTION ALLEGATIONS

25.    Pursuant to Rule 23(b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure, Plaintiff, individually and on behalf of all others similarly situated, brings this lawsuit on behalf of themselves and as a class action on behalf of the following class:

> All persons who registered for Facebook accounts in the United States and whose Personal Communications Information was obtained from Facebook via cell phone applications.

26.    Excluded from the Class are Defendants and any entities in which any

CLASS ACTION COMPLAINT

Defendant or their subsidiaries or affiliates have a controlling interest, and Defendants' officers, agents, and employees.

27.    **Numerosity:** The members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff reasonably believes that Class members number fifty (50) million people or more.   The names, addresses, and phone numbers of Class members are identifiable through documents maintained by Defendants.

28.    **Commonality and Predominance:** This action involves common questions of law or fact, which predominate over any questions affecting individual Class members, including:

    i.    Whether Facebook gave Plaintiffs and Class members proper notice of its system to collect their Personal Communications Information;

    ii.    Whether Facebook obtained consent from Plaintiffs and Class members to collect their Personal Communications Information;

    iii.    Whether Facebook improperly collected Plaintiffs' and Class members' Personal Communications Information;

    iv.    Whether Facebook owes any duty to Plaintiffs and Class members in regards to maintaining, securing, or deleting their Personal Communications Information;

    v.    To what extent Facebook has the right to use Personal Communications Information relating to Plaintiffs and Class members;

    vi.    Whether Facebook owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

    vii.    Whether Facebook breached a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

    viii.    Whether Facebook's conduct violated Cal. Civ. Code § 1750, *et seq.*;

    ix.    Whether Facebook's conduct was an unlawful or unfair business practice

under Cal. Bus. & Prof. Code § 17200, *et seq.*;

x.   Whether Facebook violated New York State General Business Law § 349;

xi.   Whether Defendants' conduct violated § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, *et seq.*;

xii.   Whether Plaintiff and the Class are entitled to equitable relief, including, but not limited to, injunctive relief and restitution/disgorgement; and

xiii.   Whether Plaintiff and the other Class members are entitled to actual, statutory, or other forms of damages, and other monetary relief.

29.   Facebook engaged in a course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the members of the class. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous common questions that dominate this action.

30.   **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the class because, among other things, Plaintiffs and the other class members were injured through the substantially uniform misconduct by Defendants.  Plaintiffs are advancing the same claims and legal theories on behalf of herself and all other Class members, and there are no defenses that are unique to Plaintiffs.  The claims of Plaintiffs and those of other Class members emanate from the same operative facts and are based on the same legal theories.

31.   **Adequacy of Representation:** Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the other Class members they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and Plaintiffs will prosecute this action vigorously.  The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

32.   **Superiority:** A class action is superior to all other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be experienced in the management of this matter as a class action.  The damages, harm, or other

financial detriment suffered individually by Plaintiffs and the other members of the class are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Facebook, making it impracticable for Class members to individually seek redress for Facebook's wrongful acts.  Even if Class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

33.    Further, Facebook has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

34.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.  Such particular issues include, but are not limited to:

a.    Whether Facebook gave Plaintiffs and Class members sufficient notice of its program to collect their Personal Communications Information;

b.    Whether Facebook received consent from Plaintiffs and Class members to collect their Personal Communications Information;

c.    Whether Facebook improperly compiled Plaintiffs' and Class members' Personal Communications Information;

d.    Whether Facebook owes any duty to Plaintiffs and Class members in regards to maintaining, securing, or deleting their Personal Communications Information;

e.    To what extent Facebook has the right to use Personal Communications Information pertaining to Plaintiffs and Class members;

f.    Whether Facebook owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

g.    Whether Facebook breached a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

h.    Whether Facebook's conduct violated Cal. Civ. Code § 1750, *et seq.*;

i.    Whether Facebook's conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, *et seq.*;

j.    Whether Facebook violated New York State General Business Law § 349;

k.    Whether Facebook's conduct violated § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, *et seq.*;

l.    Whether Plaintiffs and the Class are entitled to equitable relief, including, but not limited to, injunctive relief and restitution/disgorgement; and

m.    Whether Plaintiffs and the other Class members are entitled to actual, statutory, or other forms of damages, and other monetary relief.

n.    Whether Facebook's acts, omissions, misrepresentations, and practices were and are likely to deceive consumers;

o.    Whether Facebook's conduct violated Cal. Bus. & Prof. Code § 22575, *et seq.*;

p.    Whether Facebook failed to adhere to its posted privacy policy regarding the care it would take to safeguard Plaintiffs' and Class members' Personal Communications Information in violation of California Business and Professions Code § 22576; and

q.    Whether Facebook negligently and materially failed to adhere to its posted privacy policy in regards to the extent of their collection, use, and resulting disclosure of users' data, in violation of California Business and Professions Code § 22576.

CLASS ACTION COMPLAINT

## CLAIMS ALLEGED ON BEHALF OF THE CLASS

### First Claim for Relief
### Violation of California's Unfair Competition Law ("UCL") – Unlawful Business Practice
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

35.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 34 as though fully stated herein.

36.     By reason of the conduct alleged herein, Facebook engaged in unlawful practices within the meaning of the UCL. The conduct alleged herein is a "business practice" within the meaning of the UCL.

37.     Facebook represented that it would provide consumers with online social media services, yet failed to disclose that in so doing, it would covertly compile Personal Communications Information.  In so doing, Facebook violated its own terms of service and professed privacy policies, misled consumers about the benefits of the transaction, mischaracterized the reason for discounted social media services, and improperly accessed users' personal and private communications.

38.     Facebook's acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, *inter alia*, Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), Cal. Bus. & Prof. Code § 22575, *et seq.* (as a result of Facebook failing to comply with its own posted policies), and Cal. Consumer Legal Remedies Act [Cal. Civil Code 1750, *et seq.*] (as alleged herein); 18 USC § 2511, *et seq.* (federal wiretapping statute); and Cal. Penal Code § 632 (state wiretapping statute).

39.     Plaintiff and the Class members suffered injury in fact and lost money or property as the result of Facebook's unlawful business practices.

40.     As a result of Facebook's unlawful business practices, Plaintiff and the class are entitled to restitution, disgorgement of wrongfully obtained profits, and injunctive relief.

### Second Claim for Relief
### Violation of California's Unfair Competition Law ("UCL") – Unfair Business Practice
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

41.     Plaintiffs repeat, reallege, and incorporate by reference the allegations

contained in paragraphs 1 through 34 as though fully stated herein.

42.     By reason of the actions alleged herein, Facebook engaged in unfair "business practices" within the meaning of the UCL.  Such conduct is without reasonable usefulness and is tied to statutory obligations as pled above.

43.     As a result of Facebook's unfair business practices and violations of the UCL, Plaintiff and the Class are entitled to restitution, disgorgement of wrongfully obtained profits, and injunctive relief.

**Third Claim for Relief**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**(Cal. Bus. & Prof. Code § 17200, *et seq.*)**

44.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 34 as though fully stated herein.

45.     Facebook is a person within the meaning of CLRA since it is a corporation.

46.     Plaintiffs and Class members are consumers within the meaning of CLRA since they are individuals who pursue or obtain services for personal, family, or household reasons.  There is an exchange of consideration: Facebook provides services and users of its service accept the boundaries of the terms of service, accept the privacy policy, and allow Facebook to use that information which users have knowingly given access to.

47.     The actions of Facebook as alleged herein violate CLRA's ban on proscribed practices at Civil Code § 1770(a) in that, *inter alia*:

    a.     Facebook misrepresents the features and advantages of the service by not disclosing, and actively hiding, that Facebook uses its service as a device to obtain Personal Communications Information without knowing consent; and

    b.     Facebook advertises its services with the intent not to provide them as advertised, including with respect to compliance with its terms of service.

48.     As a direct and proximate result of Facebook's conduct, Plaintiffs and Class members suffered injury and related damages.

49.     Plaintiffs and the Class seek equitable relief for Facebook's violation of

CLRA, as authorized by statute. This includes injunctive relief to enjoin the wrongful practices alleged herein, and to take corrective action to remedy past conduct such as, *inter alia*, deleting the wrongfully obtained Personal Communications Information. This also includes restitution and/or disgorgement as authorized by law, as well as statutory attorney fees.

50. Plaintiffs and Class members reserve the right to give written notice of this claim by certified mail per statute, and to thereafter seek damages via amended complaint.

**Fourth Claim for Relief**
**Breach of Contract**

51. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 34 as though fully stated herein.

52. A contract existed at all relevant times between Facebook and the Class members, including Plaintiffs. Under the terms of the contract, Facebook's consideration to Plaintiffs and the Class members was access to Facebook's online social media system. Plaintiffs and Class members' consideration was agreement to the terms and conditions of the site and resulting performance, acceptance of its privacy policy, and permission for Facebook to use their personal information for business purposes to the extent Plaintiffs and Class members provided express permission.

53. Plaintiffs and Class members carried out all their duties under the contract.

54. Facebook thereafter breached the agreement as alleged herein with respect to collecting and using Personal Communications Information.

55. As a direct and proximate result, Plaintiffs and Class members suffered injury and related damages.

56. Plaintiffs and Class members further seek specific performance of the stated contract with respect to Personal Communications Information.

**Fifth Claim for Relief**
**Intrusion Into Private Affairs**

57. Plaintiffs repeat, reallege, and incorporate by reference the allegations

CLASS ACTION COMPLAINT

contained in paragraphs 1 through 34 as though fully stated herein.

58.   Plaintiffs and the Class members had a reasonable expectation of privacy in their cell phones, the data on their mobile devices, their call histories, their messaging histories, their network of contacts, and their Personal Communications Information.

59.   Facebook intentionally intruded into the privacy of the Plaintiffs and the Class members with respect to their mobile devices as alleged herein.

60.   Such intrusion was offensive to the Plaintiffs and the Class members, and would be to a reasonable person.

61.   As a direct and proximate result of Facebook's conduct, Plaintiffs and the Class members were harmed and suffered related damages.

62.   In the alternative, Plaintiffs and the Class members seek nominal damages.

**Sixth Claim for Relief**
**Violation of Cal. Penal Code §§ 632, 637.2**

63.   Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 34 as though fully stated herein.

64.   Facebook intentionally intercepted and recorded the recipient, dates, times, and content-length indicators of Plaintiffs and the Class members by using an electronic device (i.e. the affected users' mobile devices as modified by Facebook's application(s)).

65.   Plaintiffs and the Class members had a reasonable expectation of privacy in their cell phones, the data on their mobile devices, their call histories, their messaging histories, their network of contacts, and their Personal Communications Information.  Such expectation extended to a reasonable expectation that these elements of their communications were not being overheard or recorded.

66.    Facebook did not have the consent of all parties to the communications to record information as alleged herein.

67.   As a direct and proximate result of Facebook's conduct, Plaintiffs and the Class members were harmed and suffered related damages.

**Seventh Claim for Relief**
**Violation of New York State General Business Law (NYS GBL) § 349**

68.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 34 as though fully stated herein.

69.     Section 349 of NYS GBL prohibits deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York.

70.     Facebook furnished a service in New York within the meaning of NYS GBL § 349 by providing online social media services to Facebook users in New York.

71.     Facebook's unlawful conduct alleged herein constitutes "deceptive acts or practices" within the meaning of NYS GBL § 349.

72.     As a direct and proximate result of Facebook's conduct, Plaintiffs and the Class members were harmed and suffered related damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that this Court enter an Order:

(a)     Certifying the Class and appointing Plaintiffs as Class Representatives;

(b)     Finding that Facebook's conduct was negligent, deceptive, unfair, and unlawful as alleged herein;

(c)     Enjoining Facebook from engaging in further negligent, deceptive, unfair, and unlawful business practices alleged herein;

(d)     Awarding Plaintiffs and the Class members nominal, actual, compensatory, and consequential damages;

(e)     Awarding Plaintiffs and the Class members statutory damages and penalties, as allowed by law;

(f)     Awarding Plaintiffs and the Class members restitution and disgorgement;

(g)     Awarding Plaintiffs and the Class members pre-judgment and post-judgment interest;

(h)     Awarding Plaintiffs and the Class members specific performance;

CLASS ACTION COMPLAINT

1        (i)    Awarding Plaintiffs and the Class members reasonable attorneys' fees, costs,

2    and expenses; and

3        (j)    Granting such other relief as the Court deems just and proper.

4    **JURY TRIAL DEMANDED**

5        Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

6    Dated: May 7, 2018                     **GLANCY PRONGAY & MURRAY LLP**

7
                               /s/ *Kevin F. Ruf*

8                         Kevin F. Ruf

                     1925 Century Park East, Suite 2100

9                         Los Angeles, CA 90067

                     Tel: 310-201-9150

10                        Fax: 310-201-9160

11                        Email: kevinruf@gmail.com

12                        **GLANCY PRONGAY & MURRAY LLP**

                     Brian Murray (Pro Hac Vice to be filed)

13                        230 Park Avenue, Suite 530

14                        New York, New York 10169

                     Telephone: 212-682-5340

15                        Facsimile: 212-884-0988

                     Email: bmurray@glancylaw.com

16

17                        **LAW OFFICE OF PAUL C. WHALEN, P.C.**

                     Paul C. Whalen (Pro Hac Vice to be filed)

18                        768 Plandome Road

                     Manhasset, NY 11030

19                        Telephone: 516-426-6870

20                        Facsimile: 212-658-9685

                     Email: paul@paulwhalen.com

21

22                        **JONES WARD PLC**

                     Jasper D. Ward (Pro Hac Vice to be filed)

23                        1205 E Washington St, Suite 111

                     Louisville, Kentucky 40206

24                        Telephone: 502-882-6000

                     Email: jasper@jonesward.com

25

26                        *Attorneys for Plaintiffs and the Class*

27

28

CLASS ACTION COMPLAINT